22-14136. I'll let you all have a chance to get set up. All right, Mr. Harris, I see that you have reserved three minutes for a rebuttal and you may proceed when you are ready. Yes, Your Honor. May it please the court, Jeremy Harris on behalf of Landmark American Insurance Company. And I have the pleasure, I guess, of closing this week down. When I do an oral argument, I normally like to talk, start with what the question is, and then I'll go straight to the jurisdictional question that we posed to the parties. I know you have filed a response, but I feel certain we have questions about it. Oh, well, sure. So the parties, I'll go straight there. And the jurisdictional question was about judgments of parties who we saw as just kind of named as indispensable parties, but not where any relief was sought against them. So you had, I think it's Octor and B&B Duvall and TSG, and both of the parties agreed that... Isn't Landmark's complaint seeking compensation from TSG and some of the others? That's potentially true, but we did not ever move for any relief against them. Well, but how can you say someone's nominal when you're saying you're damaged by what they did and they owe you indemnity and reimbursement? Because we never asked for a judgment from them, and that's the problem. I agree, but your point is that it's nominal and we don't have to, and I'm going to get to that second part of it, but my first part of it is how can you say that they're nominal parties, meaning we just sort of had to add them as tagalongs when you sought affirmative relief from them? I guess the second part I would say is the court's rulings would prohibit me from getting relief from them. So the court has decided that they're my insurance. They decided that they're my insurance. They decided I had a duty to defend. They decided I had a duty to indemnify. So what motion would have I filed against TSG? That's a good question. Let's talk about that. Did you not seek a default against one or some of the parties who did not respond? I don't remember if we did or if Amerisher did, in all honesty. But a default was sought. I think I thought it was by Amerisher, but yeah, I think that's correct. Right. So somebody thought to want to collect from them, right? Now, for whatever reason, no one followed through on a default judgment in the case. I'm not sure why, but that's part of the problem that we have. In other words, either you or Amerisher sought affirmative relief from some of these folks. You thought enough to seek a default from them for not showing up. And then a lot of litigation happened and a lot was decided and the court enters a judgment, but the judgment is not marked as final in any way that I could tell. And there seems to be these claims that are sort of hanging in the wind. Well, I do think, I guess, I disagree. I do think they're a nominal party that no one's actually seeking relief from. And I'll state on the record, I'm not going to seek relief from them. I don't think Amerisher is either. Well, that's nice of you here, but we're stuck with the record as it exists below. And it seemed to me that that relief was sought there. And I think you would agree it was. So again, now you want to file some sort of dismissal on it and maybe that's effective or not. But we have to judge our jurisdiction at the time the notice of appeal was filed. Sure. So the second thing I wanted to say then is that the rules of appellate procedure do allow appeals between two parties, even when all of the actions are not done. They 100% do. And there's a great procedure under Rule 54B to do that, but there's some requirements that are there. One is that it actually be all claims against the two parties, either all claims or one claim against a particular party that's dispositive. And then the court has to make a finding that it's in the interest of justice to get that done. And then we would review those findings. But as I can tell, the district court didn't do that here. Is that right? There is no finding on that issue. There is certainly all the claims between Amerisher and Landmark have been decided. It is a final judgment as between the parties. But this is not a 54B appeal, is it? That's not how I, that's not how I listed it. You're certainly. Oh, you see it as a 54B? No, I appealed it as a final judgment. You think everything's been disposed of with a final judgment? Yeah, I think if you send us back, we're either going to simply dismiss those other parties or a non-sense, a paper judgment that means nothing. The court would do something. If we send it back, the court is going to dispose of the rest of the claims or enter a 54B judgment. I think one of those two things would happen. And I think it would just kick the can down the road and not affect the, and if the court has to do that because of I suppose, I suppose so. I know these things seem, they seem difficult in a case like this. And I know that's not a satisfactory thing, but there's longstanding reasons why that's the case. Otherwise, in other litigation, not just this case, but how we apply this rule wholesale, piecemeal litigation is extraordinarily inefficient. And as you understand, where you have one party who has prevailed on one claim, who then gets to appeal and then goes back and then another party gets to litigate and it comes back up and everything stops while that's going on. Um, the rule is meant to avoid all of that and to deal with everything all at once. So there isn't a ping ponging back and forth. I'm always honored to come before you. So if I have to do it twice, it's not going to hurt my feelings that much. But what I would state is, uh, what I said earlier is that there is no relief I could get against any other party based off the rulings that have been had against. Move the mic a little bit closer. There, there is no ruling I can get against any other parties based off the ruling that's been entered against Landmark. I can't even think of the motion that I could file against somebody else. So really you're saying a merisher should have got, uh, additional and maybe that doesn't matter. You should have done it. Let me just be clear and feel free to take a look if you want, um, when you sit down and then come back up. But at docket entry 55, you asserted, uh, against TSG quote that Landmark provided a defense to TSG in this matter and paid in excess of 75,000 in defense costs. This was done under a reservation of rights. There is an actual present and bona fide controversy between TSG and Landmark with respect to whether when Landmark owed a duty to defend and now is a duty to indemnify TSG related to the underlying litigation. I won't continue, but it's cited under the declaratory judgment act. Then at docket entries 86 and 87, Landmark moved for the entry of clerk's default against Octor and I'm going to say Octor. I'm sorry if I'm wrong, but Octor and TSG. Um, so I, I, I, the problem I have, I guess in the disagreement I have with the panel is that the orders were entered against me. That means I can't, I've lost those claims. No, you, I absolutely did. You have entry, you have, you have a default against TSG, but, but the orders, sure. But I can't then go to the court and say, I don't owe them a duty to defend because of an exclusion that's been held to be illusory. I can't then go to the court and say, Hey, I win on property damage because I lost that here. I functionally lost those claims. I got a default, but they'll, you have an entry of default and you never sought the entry of default judgment. So that was the missing piece. Sure. But what would the entry default judgment be against you? Okay. Right. Yeah. I should have lost in the same way that you have judgment against you and some other things, right? Yes. So you're right. I guess I could have a piece of paper could have been entered that said I lost beyond the final judgment, but certainly not, I would not have gotten relief against them. And I guess that was our joint argument to you that there are no affirmative claims being sought against these people. And it sounds like the court is pretty, you know, pretty convinced that we should have got that additional piece of paper. And if that's the case, that's the case. And I understand why that would be important. But I guess the reason we didn't do it in our minds is that the piece of paper, we, we didn't have a claim against them. The case, um, both of you have cited two cases that seem to suggest as least as far as you're arguing that if they are nominal parties, they don't count. Um, and so I've looked at the cases that you've cited and they all deal with nominal parties in the context of diversity jurisdiction and removal. Do you have any cases that suggest that nominal so-called nominal parties would not count for the purposes of a final judgment? No, the only cases I have are what we cited in our joint motion. I'll be frank with the court. When I prepped this week and last night, I didn't expect to be talking about this. So no, I didn't do any additional research because I thought we had dealt with this issue. So no, I don't have any additional case law on the issue. Okay. So I'm happy to talk about the appeal, but it seems like that might be a waste of time. Um, you know, the three and a half minutes, you know, so I guess I do have my three and a half minutes, uh, you know, when we get there and I, I, I still think there's a final judgment. You know, this is actually the second time this appeal has been to the 11th circuit. There was actually, I guess I'll keep talking about jurisdiction. There was actually an order entered, uh, before that said all issues as to landmark are disposed. We counsel for landmark were concerned that was a final judgment against us because amounts had been entered and everything. We filed an appeal. Uh, Marisher said, Hey, uh, this isn't right. We actually filed something that said, we agree it's not right, but we need someone to tell us that. So we don't, uh, waive any of our rights. We then filed our initial brief and then you all, not you specifically, but you all granted an order dismissing that appeal. Um, so I'm cognizant of the issue of making sure everything is final here. There is a judgment for money that had to be stayed against my client. And you know, so in, in, I think in my mind and in counsel for our Marishers mind, that was the basis for the appeals. Certainly we can go back, we can do, and you know, I'd almost request at this point we do, cause we've spent most of my time talking about this and get another piece of paper or two entered, but we're going to be here. I'm not going to have to file another brief. Nothing's going to change. It's going to be the exact same argument. So if, if that's where the court sees this and they don't think there's a procedure where they could call it a 54 B appeal, treat it that way, uh, for the sake of argument, then certainly the request would be, okay, I guess we'll go do that piece of paper and come back, but nothing is going to change functionally in the case. If you do get to the merits of the case or when we get to the merits of the case, you know, what I started to say is there are many, many issues involved in this case. And due to the complexity of the record below the issues, um, what this could be about, it sounds like it's going to be about jurisdiction, but what it could be about is an EIFS exclusion, whether that's enforceable, it could be at its most broadest sense about property damage and, uh, occurrence and how you define those things. And it could be about, um, it certainly should be about whether or not you can give a $6 million judgment to somebody, uh, without them ever asking for it and without there being a trial or any briefing on that. The EIFS exclusion, you know, I struggle a little bit to continue just because of the questions, but the EIFS exclusion, um, in Landmark's opinion very clearly defeats the duty to defend and the duty to indemnify. Um, I guess to, to go to your procedural questions, if you were to agree with me on that, perhaps there would be some measure of relief I could see a year from now against TSG. I, I guess that's my point is, uh, all the rulings went against me. If they go the other way, sure I could, if I wanted to, I don't know that I would, but if I wanted to, I could seek some type of judgment against them and say, Hey, we defended you under a reservation of rights. We spent, I'm making up numbers of $10,000 defending you give us our $10,000 back. Um, but we wouldn't, we, we would not have the ability to get relief against TSG until that were, until that were to happen. Um, I'm very sure I, I, I don't think they could get relief against TSG or Octor because it was found they had a duty to defend and a duty to indemnify. So I mean, in a very real sense, um, you know, we said we were nominal parties. What we really meant is we're missing a piece of paper that says those parties, we collect nothing against those parties. If that's enough to me, we got to do this twice. Uh, you know, I, I hope it's the same panel and I, and I'm looking forward to doing so. Thank you. Thank you. And you do have three minutes for rebuttal. Mr. Elder. Good morning, your honors. Excuse me. Don Elder on behalf of the Appalachian Mutual Insurance Company and AmeriShore Insurance Company. Um, I guess the first and foremost question we'll address is the jurisdictional question and we do believe, uh, we, we stand firm with Landmark. This might be the one and only issue that we do, that all issues were reserved or resolved rather by Judge Davis's judgment in the case. Um, the underlying lawsuit after twenty-eight days of trial in 2014, this is the underlying ramp lawsuit here, resulted in a final judgment. That is the subject of this case. The, the duties that flow from the, the insurance policies, uh, in the, so when this lawsuit was originally filed in 2015, those parties were named. We all believe that they were nominal parties because we don't, no relief was sought against them. Let me ask, let me ask you the same question that I ask your opposing counsel. The cases that you have cited regarding nominal defendants all deal with diversity jurisdiction or removal. Why, are, is, are there any case you can point to that suggests that this so-called nominal party would not count for purposes of finality? Uh, nothing that you've cited thus far suggests that. Please forgive me, Judge Branch. Uh, I, I guess maybe, uh, a compromised position would be, I, I would agree with your assessment in this case on our cases cited on the jurisdictional issue. Perhaps a supplemental brief from the, the, the parties to, uh, address that issue further, uh, which I, I, I don't mean to speak out of turn, but I think we could probably do that quickly with landmark as we collaborated on the brief we submitted. We would be happy to do that. We would not, we would be honored to be back here, but we would prefer not to be. We've been in litigation for, since 2015. The, the underlying lawsuit, by the way, was settled by Arch in its entirety. That lawsuit, that settlement stemming from that 20- Counsel, I, I want to go back to something you said. It is not true. Maybe it's true of you, but it is certainly not true that in this litigation that no one sought affirmative relief against either of what you're calling to be the nominal parties. Um, I read part of the, uh, complaint, uh, from landmark against TSG. I'll, I'll read another provision from controversy between Octor, Arch, and Landmark with respect to whether Landmark owed a duty to defend and now owes a duty to indemnify Octor and Arch. That's exactly contrary to what you just said. Yeah, forgive me, Judge Locke. I didn't mean to be disrespectful in the least. I don't think you're disrespectful. I just, I, I, I, the concept that this is nominal doesn't, even, even if you accept that the law somehow with regard to diversity jurisdiction would apply for finality under 1291, I just, it's hard for me to see how these parties are nominal. The, the duties to defend were already established in the underlying lawsuit. Landmark was defending their insured TSG. Amerishire, despite taking the position we were accessed, was defending Octor in the underlying lawsuit. When that eventually culminated in the, uh, judgment, Arch settled all claims. So it was resolved, but . . . You know, but there was, but counsel, there was a reservation of rights for all of it and you guys were trying to litigate of, that's, that's why we're here. With . . . What duties, counsel, what duties were owed? I mean, that, that's what this is about as between all of you. Well, but not necessarily, Your Honor, because it was only with respect to Octor and Arch. And Arch stepped in, settled all the claims, took that settlement, turned around and we, we, we commenced litigation in 2015. Ultimately, my client settled with Arch and then has now turned around to do the residual obligations we believe that are downstream. But these are after the fact. There was nothing left as to TSG or . . . Well, I know you believe for your client that everything was subjugated, but they don't necessarily believe that. I've read from their complaint and, and part of their complaint, and I think your opposing counsel is quite correct, which is if he wins, I don't know if he's going to win, but if he wins, you don't think he's going to want to collect from these guys? Of course he is. Uh, no, I don't, I don't believe he would. I think, uh, we'd probably get a representation from him that he would waive that claim. And the problem is, I, I, I have no doubt that you'll do that in front of Judge Davis and that may be what happens here. But we're stuck with what existed at the time the notice of appeal was filed, not how you wish it to be now that we've pointed out a jurisdictional flaw. But I just, it's hard for me to swallow that these were nominal where you're seeking money and declaratory relief with regard to these very parties, with regard to issues that Landmark is saying is a bona fide controversy between the parties. Well, forgive me, Your Honor, maybe I'm being an artful, but I, I just, I think the settlement with Arch cures all of that in the underlying lawsuit. We had a judgment that was against all parties, including TSG and Octor. Arch as the subrogee and Assany, which was the, they were the surety of the underlying lawsuit. They were effectively Octor. They defended Octor's conduct, but they settled the entire lawsuit. So the, the obligations that we're, we're adjudicating are running to Octor only, not to TSG. I understand what the pleadings are, but the reality of this case when the judgment was entered is we are seeking a resolution as to the obligations to Octor. And that claim was fully and finally resolved, Your Honor. And that's why I think jurisdiction is appropriate here. I hope I've convinced the panel, but uh. And if the parties would like to file a supplemental brief, please feel free to do so within ten days, if you want to. Your Honor, please excuse me. Uh, I'll consult with counsel. I, I think that would probably be a good idea, but uh, we will do that within ten days. Uh, there was very little discussion on the, on the merits of this. I will agree with uh, my opposing counsel here. This was uh, an enormous case. It was a twenty-eight day trial in the underlying lawsuit. It is a well-developed factual record with intimate factual findings, both lay and expert testimony as to the nature of the damage that was ongoing during the landmark policy periods and caused by its, in short, TSG. Um, it culminated in a judgment and resulted in this declaratory judgment action. What you uh, unfortunately Mr., Mr. Harris was cut a little short, but he did mention the potential application of the EIFS exclusion. And uh, we would argue that that does not apply here. First and foremost, uh, the insurer asserting an exclusion has the burden of proving that exclusion. We don't believe that they can do that here. Why? Because that exclusion only applies to completed operations and the record is replete that the alleged damage pled in the underlying plate, complaint, excuse me, and developed throughout the underlying trial, the record, and developed scoured by Judge Davis indicates that not only was TSG on the premises during the, or the, the landmark policy periods, but they were working, they were ongoing, their operations, and there was damage occurring within those policy periods. That's what we're looking for here. This exclusion doesn't apply on its face. This is an ongoing operation loss. The language of the exclusion is explicit to completed operations. Second, the court found that it was illusory. The court found that it was illusory, and we've heard a lot of talk about this today on illusory coverage, and that is a harsh penalty, but it applies here because the landmark's position is, first, their named insured TSG industries did nothing with EIFS. They didn't touch it. They didn't install it. EIFS, by the way, was decorative and nominal at the project. Um, so it was not, no mention whatsoever was in the subcontract between Octor, the general contractor, and TSG. What Landmark has argued is, by virtue of the general contract between Octor and Rapp, the property owner, which was in 2005, there is a mention of EIFS being used on the exterior. Landmark has argued that by virtue of the breadth of their exclusion, that their no mention whatsoever for TSG, their named insured, or Octor. Now that's funny that they took that position because they didn't reserve rights on that exclusion to either Octor, their additional insured, primary coverage, or to TSG. Um, so the functional effect of that was that when TSG stepped on the project and they started doing work, it looks like in December of 2005, the Landmark policy incepts in January of 2006, that they were uninsured. And Landmark has cited the Bitco case from the Northern District, and they've hung their hat on its applicability to this case. And that case is distinguishable for two reasons. First, it had a broader property damage definition than what we have here. That one included property damage for ongoing and completed operations. Our exclusion here is only for completed operations, not for ongoing operations. Second, that court actually rejected the illusory coverage argument because they found that the policy afforded coverage for a, excluded coverage for the EIFS for only a small subset of claims, only relating to the property damage. This exclusion applies to property damage, personal and advertising injury, and bodily injury. There was nothing available to TSG when they stepped on this project. That's how broad this is. Incidentally, this is a manuscript endorsement. This isn't authored or sanctioned by the ISO, the Insurance Services Organization, which are the standard forms. So the breadth of this was offensive, I believe, to Judge Davis. And what he found was that you can't, there was no coverage available, and that does fall within the illusory coverage. We believe that should be affirmed, Your Honor. There was also some mention by Mr. Harris, and I know he'll have time to rebut this, that there were some deprivation of due process. We believe that's respectfully flawed. The record is replete with obligations by landmark that they had an obligation to plead, they had an obligation to respond. There were disclosures as to the $5.9 million in fees that were being requested from their client that is being, that was assigned to my client by Arch. I don't mean to belabor the port, but the point, Your Honors, but this is a, the record is enormous, and we believe when it's looked at in its entirety, it's clear there was no deprivation of due process. And if we can get through this jurisdictional issue, we believe this judgment should be affirmed in its entirety. So regardless of Landmark's actual notice of the fact that you sought the fees and the The award of that stems from the duty to defend award, Your Honor. It's a natural and ordinary damage flowing from Landmark's breach of its duty to defend Octor. Did you move for a summary judgment seeking that amount? Not that amount, Your Honor, but it flows naturally from the orders on the duty to defend. And we're citing the Treach case that we have set forth in our papers in the Geico v. Rodriguez, which talks about not only is that an amount that flows from a breach of the duty to defend which we have, but it's a supplementary payment. It's a cost taxed against the insured, and we believe the cases we've cited support that position. That is the exact language that is in Landmark's policy. The Treach case talks about that. Cost taxed against an insured. The court goes on to say if the carrier didn't want to pay for these fees . . . So the supplemental payments provisions, don't they just deal with litigation costs rather than attorney's fees? They do not, Your Honor, and I believe, I don't mean to belabor this, but the Geico v. Rodriguez and the, I think I pronounced it Treach, it's Treath cases we've cited in our papers, specifically talking about an award of attorney's fees. And the court talks in terms of had the carrier wanted to exclude that, they should have. Of note, the form that is used, the general liability form that is used by Landmark in this case is the CG-1001, which is an older form. The industry, the ISO, I mentioned manuscript, the industry, which writes on the ISO forms, actually changed this language because they realized this was a problem. The cost taxed against the insured on the 1207, December 2007 form. But we're not dealing with that form here. We are dealing with the form that was addressed in the Treach case. Beyond that, Your Honor, there are several property damage allegations that we believe we've adequately addressed in our brief. We would like to take you up on the supplementary briefing. We will discuss that with Landmark. If the court has no further questions, I would thank the court for its time. Thank you. Mr. Harris, you have three minutes. Yeah, I sat over there trying to decide what I was going to say after this went the way it went, and I think I'll start with an apology. It certainly wasn't Landmark's intention to waste the court's time with an appeal that pretty obviously the court has decided is not right. I don't think anyone here blames anybody. These are complicated things even for us. So, there's no need, from my perspective, there's no need to apologize. We just want to get it right. Understood. And, you know, I guess the request, and we'll talk, the request off the top of my head, and we'll talk to counsel for Amerisher, is if there's some procedure where we could relinquish jurisdiction temporarily back to the district court to enter a one-sentence or two-sentence order that says Landmark shall get nothing from, you know, Octor and TSG, and then enter, and then say it's judgment, and then enter its final judgment. I just, if there's any way to not redo this whole thing, I'd love that, but maybe there's not. I don't think it requires to redo the whole thing. I think your instinct is right, which is when you do whatever you need to do at the district court, all you ask is that the briefs be reinstated. Yeah, that's all I'm asking is we want to get, it seems, I mean. The problem is we don't have, to relinquish jurisdiction is a necessary determination that we have it, and jurisdiction is determined at the time the notice of appeal is filed. It can't be sort of retroactively granted by something that happens. That's the problem that we're having. We'd love to decide it too. It's not as if we like to waste anybody's time either. We're here to decide cases, but we also have to make sure that we're within our jurisdictional limits. Yeah, I mean, we'll do a brief. I mean, we'll do a supplemental brief, but I guess what I would say, at this point, I would almost disagree with the Mayor's Share with the idea that you should just decide it and that we're right, because I didn't get to have my oral argument. We didn't really go over the incredibly important. I mean, this is a $10 million case with hundreds of millions of dollars at stake in the industry, so the idea that we should decide this based off of my two minutes of argument and four minutes of argument there, it seems almost like the court seems to have already decided it doesn't have jurisdiction. All I'd ask is whatever procedures we can use to get back to you sooner rather than later, because it's been going on so long, let's do that. I disagree with Mr. Elder on the EIFS exclusion and the other stuff, but unless you really want me to, I'm not going to get into it, because it seems like it's pretty clear we get to do this again on another day. So that's all I have. Thank you. Thank you. We have your case under advisement, and that concludes this oral argument week, and court is adjourned.